IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JESUS LOPEZ-BONILLA, et al.,

    Petitioners,

v.             CIVIL ACTION NO. 3:26-cv-00177

LEONARD ODDO, et al.,

    Respondents.

**ORDER**

Pending before the Court are Petitioners' Jose Manuel Lopez-Espinola and Jesus Lopez-Bonilla ("Petitioners") Petition for Writ of Habeas Corpus, (ECF No. 1), and Motion for Immediate Order to Show Cause, (ECF No. 4). Petitioners filed their Petition on March 6, 2026. (ECF No. 1.) When Petitioners filed their Petition, they were detained in the custody of Immigration and Customs Enforcement ("ICE") at the Moshannon Valley Processing Center ("MVPC") in Philipsburg, Pennsylvania. (ECF No. 1 at 1, ¶ 1.) To the Court's knowledge, they continue to be detained at MVPC.

"The plain language of the habeas statute [] confirms the general rule that for core habeas petitions challenging present physical confinement, *jurisdiction lies in only one district: the district of confinement*." *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2024) (emphasis added). Philipsburg is located in Centre County, Pennsylvania, (ECF No. 1 at 1, ¶ 1), which is located within the jurisdictional boundaries of the Middle District of Pennsylvania, *see* 28 U.S. Code § 118(b). Thus, this Court seemingly lacks jurisdiction over the Petition.

Petitioners concede that, generally, "jurisdiction lies in only one district: the district of confinement." (*Id.* at 3–5, ¶¶ 8–14 (quoting *Padilla*, 542 U.S. at 443)). Nevertheless, Petitioners argue that this Court should recognize an exception to this default rule for two reasons. (*Id.* at 4–5, ¶¶ 10–14.).

First, Petitioners argue that the Court should deviate from the default rule because they are detained in a privately owned facility. (*Id.* at 4, ¶ 10 (citing *Saravia v. Sessions*, 280 F.Supp.3d 1168, 1185 (N.D. Cal. 2017)).) Second, Petitioners argue that the Government acted in bad faith by obstructing Petitioners' access to this Court. (*Id.* at 4–5, ¶¶ 11–14 (citing *Padilla*, 542 U.S. at 453–54; *Suri v. Trump*, 785 F. Supp. 128, 139 (2025)). Specifically, Petitioners recite a sequence of events discussed below, which purport to show that Petitioners were transferred out of the Southern District of West Virginia for the specific purpose of attempting to evade the jurisdictional authority of the Southern District of West Virginia. (*See id.* at 5, ¶¶ 12–15.)

On February 26, 2026, Petitioners were pulled over on route 64 near exit 20. (*Id.* at 7 ¶¶ 22–23.) Petitioners are unaware of any lawful basis for the traffic stop. (*Id.*) During the stop, the officer asked Petitioners for identification. (*Id.*) Petitioners were then arrested and taken to Western Regional Jail ("WRJ"). (*Id.* at 7 ¶¶ 22–23.) Counsel for Petitioners was informed by other ICE detainees at WRJ that Petitioners would be transferred to South Central Regional Jail ("SCRJ") via the ICE processing facility in Poca, West Virginia. (*Id.* at 5, ¶ 12.) Petitioners allege the transfer did not proceed as scheduled, and on February 27, 2026, at 4:00 P.M., ICE arrived at SCRJ with Petitioners. (*Id.*, ¶ 13.) On that same day, Judge Goodwin entered orders in seven different immigration detention cases, in which he issued the following final warning to the government:

> If systematic violations continue despite repeated judicial findings of unconstitutionality, this court will employ the full range of its inherent authority, including (1) injunctive relief prohibiting detention without individualized custody determinations, (2) contempt proceedings against officials who defy this court's orders or constitutional rulings, (3) monetary sanctions against responsible officials, and (4) any other such other relief as may be necessary to vindicate constitutional rights and enforce this Court's rulings.

*Dominguez v. Mason*, 2:26-cv-00121, 2026 WL 561235, at *6 (S.D. W. Va. Feb. 27, 2026) (Goodwin, J.).

Based on this information, Petitioners allege that ICE transferred them out of the Southern District of West Virginia specifically "to try and evade the jurisdictional authority the Court[.]" (ECF No. 1 at 6, ¶ 15.) Petitioners further argue that, because Respondents acted in bad faith, they waived their objections based on the default jurisdiction rule. (*Id.*, ¶ 15, n.5 (citing *Padilla*, 542 U.S. at 452 (Kennedy, J., concurring)). Also, Petitioners argue that, to the extent Respondents intend to "raise a venue/jurisdictional objection here and dispute Petitioner's representations herein, Petitioner will seek expedited discovery on the facts and circumstances surrounding Petitioner's transfer." (*Id.*)

The Court has not received any response from the Respondents, and the Court's jurisdiction remains uncertain.[1]

Accordingly, **IT IS HEREBY ORDERED** that:

1. Petitioners shall file a written response to this Order on why this Court has jurisdiction by **Monday, March 16, 2026, at 5:00 P.M.**

---

[1] *See Padilla*, 542 U.S. at 454 (Kennedy, J. concurring) (noting limited exceptions to the default jurisdiction rule); *see also Gonzalez-Pablo v. Mason*, 788 F. Supp. 3d 759, 763n.1 (S.D. W. Va. 2025) (Goodwin, J.) (indicating that when the Government seeks to avoid judicial review, jurisdictional issues are implicated); *Llano v. Garland*, 2:25-cv-12328-RGK-ACCV, 2026 U.S. Dist. LEXIS 30554 (C.D. Ca. Feb. 12, 2026) (ordering Plaintiff to show cause because his petition was not filed in the district of confinement); *Ozturk v. Trump*, 777 F. Supp. 3d 26, 37–38 (D. Mass. 2025) (collecting cases); *but see Acosta v. United States Dep't of Homeland Sec.*, 2026 WL 440456, at *1 (finding the court lacked jurisdiction because it was not the district of confinement, even though the petitioner was housed in a private contract facility).

2. Respondents shall have an opportunity to file a response by **Monday, March 23, 2026, at 5:00 P.M.**

3. Petitioners shall have the opportunity to file a reply by **Monday, March 30, 2026, at 5:00 P.M.**[2]

4. Respondents shall not remove or facilitate the removal of Petitioners and/or their property from the United States, or transfer Petitioners to a location further from the Southern District of West Virginia than where he is presently located, pending further order of the Court.

5. Respondents shall **FORTHWITH, IMMEDIATELY, AND IN NO EVENT LATER THAN 24 HOURS FROM SERVICE OF THE PETITION AND THIS ORDER** afford Petitioners a reasonable opportunity to confidentially consult with counsel and shall take all necessary steps to facilitate such communication.

6. Service of this Order shall be made by Petitioners on the United States Attorney for the Southern District of West Virginia **FORTHWITH but no later than 5:00 P.M. on Monday, March 9, 2026**, and shall constitute good and sufficient service on the federal defendants.

7. Service of this Order shall be made by Petitioners on Leonard Oddo, Facility Administrator of the Moshannon Valley Processing Center, **FORTHWITH** but no later than **5:00 P.M. on Monday, March 9, 2026,** and shall constitute good and sufficient service on Facility Administrator Oddo.

---

[2] Alternatively, the parties could forego briefing if (1) they consent to this case being transferred to the Middle District of Pennsylvania, or (2) Respondents consent to release Petitioners consistent with this Court's prior orders and, within 24 hours of Petitioners' release, provide a written response notifying the Court of Petitioners' release. *See, e.g., Serna Zareta v. Mason*, 2:26-cv-00069**,** Judgment Order, ECF No. 38 (S.D. W. Va. Feb. 13, 2026) (ordering that the petitioners be released immediately and that any personal possessions belonging to the petitioners be returned).

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

        ENTER:     March 9, 2026

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE